IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES ZANDFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-172-GMS |
| | ) |
| SECURITIES AND EXCHANGE | ) |
| COMMISSION and UNITED STATES | ) |
| TREASURY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

**I. INTRODUCTION**

The plaintiff, Charles Zandford ("Zandford"), who proceeds pro se, filed this lawsuit on February 28, 2011, alleging constitutional violations under the Due Process clause and statutory violations under the Debt Collection Improvement Act of 1996. (D.I. 1, 10.) Zandford alleges that the defendant the Securities and Exchange Commission ("SEC") violated his right to due process and violated the Debt Collection Improvement Act of 1996 ("DCIA"), 31 U.S.C. § 3701, *et seq.* and the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78a, *et seq.* Zandford asserts jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.[1]

Before the court is a motion to dismiss the amended complaint filed by the defendant the United States Department of Treasury ("the Treasury"), a motion to dismiss the statutory claim and motion for summary judgment on the due process claim filed by the SEC, and Zandford's combined motion for discovery and opposition to the SEC's motion. (D.I. 12, 16, 18.) For the

---

[1] Zandford does not seek monetary damages.

reasons that follow, the court will *sua sponte* dismiss the amended complaint as the injunctive relief sought is moot and the Declaratory Judgment Act cannot provide Zandford the relief he seeks.

## II. BACKGROUND

Zandford filed the instant complaint to challenge the legality of the SEC's September 22, 2010 referral of a federal district court disgorgement judgment to the Treasury's Financial Management Services ("FMS") for collection by administrative offset. Zandford alleges that the referral is not legally enforceable and is void on constitutional and statutory grounds.

In July 1995, Zandford was convicted in the United States District Court for the District of Maryland of thirteen counts of wire fraud for misappropriating the proceeds from sales of securities in customers' investment accounts. On September 22, 1995 he was sentenced to fifty-two months imprisonment and ordered to pay $10,800 in restitution. *United States v. Zandford*, 110 F.3d 62 (4th Cir. 1997) (table decision). On the day he was sentenced, the SEC filed a civil complaint against Zandford alleging the misappropriation of the proceeds violated § 10(b) of the Securities Exchange Act and Rule 10b-5.[2] *See Securities and Exch. Comm'n v. Zandford*, Civ. No. 95-2826-AMD (D. Md.). Following several rounds of appeals, the district court reinstated final partial judgment in favor of the SEC and against Zandford in the disgorgement sum of $343,000.[3] *See Securities and Exch. Comm'n v. Zandford*, 114 F. App'x 118 (4th Cir. 2004) (not published). The judgment denied the SEC's motion for pre-judgment interest and credited

---

[2]The criminal case and civil case were filed in the United States District Court for the District of Maryland. Zandford served his term of imprisonment and is now living in Delaware.

[3]*Securities and Exch. Comm'n v. Zandford*, 535 U.S. 813 (2002), describes the criminal and civil cases.

Zandford with $10,800 against the disgorgement principal of $343,000. (D.I. 10, ex. 2.) On February 1, 2005, the SEC sent Zandford a notice of the past due disgorgement amount of $343,000 plus additional interest, penalties, and fees as allowed by law. The letter stated that the amount became past due on March 27, 2004. Zandford requested a review stating that he was "not capable" of paying the disgorgement amount. On June 27, 2005, the SEC advised Zandford that it had reviewed documents and other information he provided in considering his request for waiver. The SEC determined that it could not recommend any waiver of the amount owed and advised Zandford that the debt would be referred to the Treasury as set forth in its February 1, 2005 letter. (D.I. 17, exs. A, B, D.)

The SEC referred the debt owed by Zandford to the Treasury on or about September 8, 2005. The debt was immediately returned to the SEC because the referral document stated that the debt was subject to various interest rates and the computerized debt tracking program used by the Treasury was unable to accommodate debts subject to variable interest rates. The Treasury implemented a new computerized debt tracking system and, therefore, suspended the referral of any debts from any federal agency on September 9, 2005. The Treasury recommenced acceptance of debt referrals from federal agencies on October 3, 2005. The SEC recommenced referral of debts to the Treasury on March 16, 2006. (D.I. 17, ex. 1.)

In the meantime, on October 11, 2005, Zandford filed a Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Delaware. When Zandford inherited assets from his late wife's estate, the bankruptcy action converted from a no-asset case to an asset case. The SEC filed a proof of claim in the amount of $343,000 for the disgorgement principal owed by Zandford. In turn, Zandford instituted an unsuccessful adversarial action that challenged the

3

SEC's standing to file a "preemptive proof of claim" before referring the disgorgement to the Treasury. On February 25, 2009, the Bankruptcy Court ordered the trustee to pay $51,402.022 towards the SEC's proof of claim, and the trustee subsequently deposited $51,419.95 into the Treasury registry. (D.I. 10.)

The bankruptcy case closed on August 9, 2009. On September 22, 2010, the SEC sent Zandford a notice that the debt he owed to the SEC had been refereed to the Treasury for collection in the amount of $648,416.19. Zandford was advised that, unless payment was made within ten days from the date of the letter, collection would continue in the amount of $842,941.05 which includes all applicable fees, interests, and penalties. (D.I. 10, ex. 4.) The Treasury's "cross-servicing dispute resolution," request dated September 30, 2010, states "debtor disputes validity of debt stating post judgement interest assessed is a violation of the court order and SEC is foreclosed from charging penalties and from transferring the debt to Treasury." (D.I. 10, ex. 5.) The Treasury advises the court that it has returned the referral of the debt to the SEC and it is not presently pursuing further collection efforts. (D.I. 12.)

According to Sally Tidwell ("Tidwell"), the SEC refers delinquent debts to the Treasury for collection through a variety of means and methods.[4] While the DCIA provides that debts 180 days delinquent shall be referred to the Treasury for debt collection service, the Treasury routinely accepts for referral and collection debts that are substantially more than 180 days delinquent. If a debtor files for bankruptcy, the Treasury returns the debt to the referring agency

---

[4]Tidwell is the manager of the debt resolution branch, debt management operations center in the FMS which is a bureau of the Treasury,

4

so that the agency can take any appropriate action unless the debt is not, or is no longer, subject to the automatic stay provisions of the bankruptcy code.

Zandford alleges that the September 22, 2010 letter: (1) did not credit him with $10,800 against the disgorgement's principal, include pre-judgment interest, and applies variable post-judgment interest rates in derogation of the District of Maryland's February 25, 2004 order; (2) purportedly consists of fees and penalties charged by the Treasury; and (3) is untimely, unenforceable, and void because he was not provided with a timely notice, a meaningful opportunity for a hearing, and the SEC deliberately overstated the claim, all in violation of the right to due process. Finally, Zandford alleges that the SEC acted in excess of its delegated powers rendering the referral process of the disgorgement to Treasury void. Zandford seeks declaratory relief finding void the referral of the disgorgement to the Treasury and unspecified injunctive relief.

The Treasury moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 12.) Zandford does not oppose the Treasury's motion. (D.I. 14.) The SEC moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that it is immune from suit from those claims raised pursuant to the DCIA and for summary judgment pursuant to Fed. R. Civ. P. 56 on the grounds that there is no genuine issue of material fact that Zandford received all the process he was due under the applicable regulations. (D.I. 16.) In response, Zandford filed a combined motion for discovery and opposition to the SEC's motion. (D.I. 18.)

### III. DCIA

The DCIA provides the relevant statutory and regulatory standards for the Government's debt collection efforts. Pursuant to 31 U.S.C. § 3711(d)(2), the Secretary of the Treasury ("the

Secretary") and the Attorney General of the United States are authorized to prescribe standards for Federal agency use in the administrative collection, offset, compromise, and the suspension or termination of collection activity for civil claims.[5] The DCIA contemplates that, in the event debt collection efforts remain unsuccessful, the Treasury will assume debt collection responsibilities. *See* 31 U.S.C. § 3711(g)(1); 31 C.F.R. § 901.1(e) (citing 31 C.F.R. § 285.12) ("[a]gencies shall transfer to the Secretary any debt that has been delinquent for a period of 180 days or more so that the Secretary may take appropriate action to collect the debt or terminate collection action."). Section 3716 provides that the government agency may collect the unpaid debt by administrative offset after giving the debtor written notice of the claim and an opportunity for a review within the agency of the decision of the agency related to the claim. 31 U.S.C. § 3716(a). The SEC's regulations for collection of debts by administrative offset provide for similar notice and review. *See* 17 C.F.R. §§ 204.1 *et seq*. With regard to notice, "[g]enerally, one demand should suffice." 31 C.F.R. § 901.2(a). "When an agency previously has given a debtor any of the required notice and review opportunities with respect to a particular debt (*see, e.g.*, § 901.2), the agency need not duplicate such notice and review opportunities before administrative offset may be initiated." 31 C.F.R. § 901.3(b)(4)(iv). Agencies referring delinquent debts to the Treasury must certify that the debts are past due and legally enforceable and that the Agency has complied with all due process requirements as set forth in 31 U.S.C. § 3716(a). *See also* 31 C.F.R. § 901.3(b)(5); 17 C.F.R. § 204.9.

---

[5]Regulations implemented by the Treasury subsequent to the DCIA are found at 31 C.F.R. § 285.12 *et seq.*, 31 C.F.R. pt. 900, and specifically as to the SEC at 17 C.F.R. § 204.1 *et seq.*

6

When a final agency determination is made after an administrative appeal or review process, the creditor agency must transfer such debt to [the] FMS, if more than 180 days delinquent, within 30 days after the date of the final decision. 31 C.F.R. § 285.12(c)(3)(ii). Section 285.12(c)(3)(ii) provides the thirty-day period to allow a debtor the opportunity to pay its debts or enter into a repayment plan prior to mandatory cross-servicing rather than demanding the immediate transfer of a debt that is already delinquent for more than 180 days. *See Confederated Tribes and Bands of the Yakama Nation v. United States*, 89 Fed. Cl. 589, 608 n.27 (Fed. Cl. 2009) (citing *Transfer of Debts to Treasury for Collection,* 64 Fed. Reg. 22,906, 22,907 (Apr. 28, 1999) (to be codified at 31 C.F.R. pt. 285). "Nevertheless, the regulations contemplate that '[d]ebts should be transferred to [the] FMS immediately following a decision on an appeal when the agency determines that it is unlikely that the debtor will pay or enter into a repayment plan within the 30 day period.'" *Id.*

The regulations do not provide for a private right of action, and state as follows: "standards in this chapter do not create any right or benefit, substantive or procedural, enforceable at law or in equity by a party against the United States, its agencies, its officers, or any other person, nor shall the failure of an agency to comply with any of the provisions of parts 900-904 of this chapter be available to any debtor as a defense." 31 C.F.R. § 900.8. "Thus, the regulations prohibit the Debtor from using these agency operating procedures as either a sword or a shield." *See In re Zandford*, 2006 WL 2036990 (Bankr. D. Del. 2006).

## IV. INJUNCTIVE AND DECLARATORY RELIEF

### A. Injunctive Relief

Zandford seeks unspecified injunctive relief.[6] "The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury," or a "presently existing actual threat; (an injunction) may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." *Abraham v. Delaware Dep't of Corr.*, 331 F. App'x 929, 932 (3d Cir. 2009) (not published) (citing *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (other citations omitted). As discussed by the Treasury, it has returned the SEC referral and is no longer attempting to collect monies from Zandford. Hence, the court finds moot the claim for injunctive relief.

### B. Declaratory Relief

Zandford seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 to "declare, determine, and find that SEC's referral of the disgorgement to Treasury is void." (D.I. 10 at 19.) The SEC's most recent referral to the Treasury occurred on September 22, 2010. As discussed, the Treasury has since returned the referral to the SEC.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The phrase 'case of

---

[6]For injunctive relief the Amended Complaint states, "[a]llow Zandford to seek appropriate relief at a later date." (D.I. 10 at 19.)

8

actual controversy' 'refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III [of the Constitution].'" *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007) (other citations omitted). To establish jurisdiction under the Declaratory Judgment Act, Zandford bears the burden of proving that the facts alleged "under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests;" and that it be "real and substantial" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (citations omitted). Among other things, this means that "a court may not adjudicate 'a difference or dispute of a hypothetical or abstract character' or 'one that is academic or moot.'" *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008).

Declaratory judgment is inappropriate solely to adjudicate past conduct. *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (not published) (citing *Gruntal & Co., Inc. v. Steinberg*, 837 F.Supp. 85, 89 (D.N.J. 1993)) (upholding dismissal of plaintiff's declaratory relief claim, which asked that the District Court "declare that his constitutional rights were violated."). In addition, it is not meant simply to proclaim that one party is liable to another. *Id.* (citing *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1553-54 (Fed. Cir. 1994) (en banc) (concluding that the plaintiff's prayer for a "declaration" of a regulatory taking was "different from a formal declaration under the Declaratory Judgement Act.")).

9

Examining the totality of the circumstances in light of the *MedImmune* standard for jurisdiction over declaratory judgment claims, the court concludes that Zandford cannot establish that a current and concrete controversy exists between the parties. It is undisputed that there is no longer a referral to the Treasury and that the Treasury is no longer attempting to collect monies from Zandford.[7] The existence of an actual controversy is a necessary prerequisite to the continued litigation of a declaratory judgment action. *See Abraham*, 331 Fed. App'x at 932.

To the extent Zandford is seeking judgment that the September 22, 2010 referral is void, the Declaratory Judgment Act is not the proper means of adjudicating his claim. *See Corliss v. O'Brien,* 200 F. App'x at 84 (holding declaratory judgment is inappropriate solely to adjudicate past conduct or as a means to proclaim that one party is liable to another). The request for declaratory judgment as stated in the amended complaint specifically seeks a formal declaration regarding an adjudication of past conduct as it relates Zandford's due process rights and the 2010 SEC referral to the Treasury. Declaratory relief is not appropriate with regard to Zandford's request relating specifically to past conduct.

---

[7] With regard to any potential DCIA claim, dismissal is appropriate inasmuch as 31 C.F.R. § 900.8 does not provide for a private right of action against the SEC. *See In re Zandford*, 2006 WL 2036990 (Bankr. D. Del. 2006) ("[t]he regulations prohibit the Debtor from using these agency operating procedures as either a sword or a shield."). In addition, the evidence of record does not support a finding that Zandford's due process rights were violated. Zandford was provided his due process rights when he was first notified of the past due disgorgement on February 1, 2005. Zandford received notice, requested a review, submitted documents in support of his position, and was advised that the SEC could not recommend a waiver. Zandford received a second notice in 2010 following the close of his bankruptcy case. Pursuant to administrative regulations, the SEC was not required to provide Zandford with duplicate notice. *See* 31 C.F.R. § 901.3(b)(4)(iv) ( "When an agency previously has given a debtor any of the required notice and review opportunities with respect to a particular debt (*see, e.g.*, § 901.2), the agency need not duplicate such notice and review opportunities before administrative offset may be initiated.").

10

Zandford also seeks discovery from defendants. To the extent he seeks discovery of certain documents, again, the Declaratory Judgment Act is not the appropriate vehicle for obtaining discovery from an opposing party.

The amended complaint contains no claims that fall within the ambit of the Declaratory Judgment Act. Therefore, the court will *sua sponte* dismiss the amended complaint for a declaratory judgment.

## V. CONCLUSION

For the above reasons, the court exercises its discretion and will *sua sponte* dismiss the complaint as there are no claims that fall within the ambit of the Declaratory Judgment Act and injunctive relief is moot. All pending motions are denied as moot. (D.I. 12, 16, 18.)

An appropriate order will be issued.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

Feb 27, 2012
Wilmington, Delaware

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES ZANDFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-172-GMS |
| | ) |
| SECURITIES AND EXCHANGE | ) |
| COMMISSION and UNITED STATES | ) |
| TREASURY, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

At Wilmington this 27th day of July, 2012, for the reasons set forth in the Memorandum issued this date;

1. The complaint is **dismissed** without prejudice as there are no claims that fall within the ambit of the Declaratory Judgment Act and injunctive relief is moot.

2. All motions are **denied** as moot. (D.I. 12, 16, 18.)

3. The clerk of court is directed to **close** the case.

_____
CHIEF, UNITED STATES DISTRICT JUDGE